IN the MATTER OF the ESTATE OF Rachel D. WARNER, a/k/a Rachel Dennis Warner, deceased: Clarence DENNIS, M.D., Petitioner-Appellant,

v.

CIRCUIT COURT FOR BAYFIELD COUNTY and The Honorable Thomas J. Gallagher, presiding, Respondents.†

Court of Appeals

*No. 90-2192. Submitted on briefs February 19, 1991.—Decided March 5, 1991.*

(Also reported in 468 N.W.2d 736.)

† Petition to review denied.

646

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Dale R. Clark* of *Clark & Clark* of Ashland.

On behalf of the respondents, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *James H. McDermott,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Clarence Dennis, who sought to be named personal representative of Rachel Warner's estate, appeals an order rejecting his petition for original probate of Warner's will pursuant to sec. 868.01(5), Stats. We concur with the court's characterization of the issue on appeal as whether it abused its discretion by

647

rejecting the petition for administration. Because the court failed to examine the relevant facts necessary in determining whether to grant or refuse original probate, we reverse and remand the matter for further proceedings.

Warner died in Arizona. The parties do not dispute that at the time of her death she was domiciled in Arizona and owned a house there. One month before the trial court ruled on the Warner estate's petition for administration, it had admitted to probate the will of Warner's sister, Louise Wight, a domiciliary of Wisconsin. Wight predeceased Warner, leaving all her property to Warner.

Prior to her death, Warner sent a two-page handwritten letter to her Wisconsin attorney who was arranging for probate of the Wight estate. The letter indicated, in pertinent part:

> Clarence is happy to be co-executor and will be at Cable for the summer about the middle of this month.
>
> . . ..
>
> Since Louise and I were the last of the Dennis family, we had agreed to leave whatever assets remained of our combined estates to the U of Minn School of Mines in honor of our brother, Richard C. Dennis. There will be no bequests of any kind to my brother Harry's 3 children. As soon as it is feasible to draw up a will to that effect, I hope you will do so. This scholarship is to be granted upon my death.

The letter was written on the front and back of one page of stationery. Warner signed her full name on the front and initialed the reverse side.

Holographic wills are not generally recognized as valid in Wisconsin. *See* sec. 853.03, Stats. However, a will is valid if executed in accordance with the law of the place where the testator is domiciled at the time of the will's execution. Section 853.05, Stats. Arizona recognizes the validity of holographic wills. Prior to the hearing on his petition, Dennis submitted to the court information on Article 5, Title 14, of the Arizona Revised Statutes, which governs the validity of a holographic will in that state. He also indicated the willingness of August G. Eckhardt, former University of Wisconsin Law School professor and author in the 1960's of the *Workbook for Wisconsin Estate Planners,* presently practicing in Tucson, Arizona, to provide an affidavit or other certification with respect to the Arizona statutes and interpretive case law involved.

Dennis further provided the court with copies of three prior wills executed by Warner, along with a handwritten letter from one legatee of a previous will indicating that "I do not plan to make a claim on her estate." The record discloses that notice of the hearing, along with a copy of Warner's handwritten letter, was properly given all interested parties.

At the hearing, counsel for the University of Minnesota was briefly heard and requested that the court admit Warner's will to probate. Dennis, a cousin of Warner's and executor of Wight's estate, appeared, along with his wife. Three other witnesses who were represented to the court as capable of giving evidence of Warner's testamentary intent were also present. No party appeared to oppose the petition, and no objection to probate had been made prior to the hearing.

Dennis' counsel argued that a number of concerns favored a conclusion that Wisconsin should exercise

original probate jurisdiction in this case: the convenience of the court in administering the Wight and Warner estates concurrently; the convenience of Dennis, who would arguably be named administrator of both estates and who was a resident of Minnesota with a summer home in Wisconsin; and the convenience of the University of Minnesota, the principal legatee under Warner's proffered holographic will. The trial court responded:

> I think there are serious legal issues that have to be decided as to *whether or not this will qualify as holographic Will.* I have already indicated she was an Arizona resident, she was domiciled in Arizona at the time of death. Arizona law will have to be applied and it is going to be my decision that [the] Arizona Court[ ] will be the one that's going to interpret it. (Emphasis added.)

In its written decision, the court rejected the petition "because decedent's domicile in Arizona makes Arizona the proper state and Wisconsin an improper state for administration." The court noted that it reserved any ruling on the validity of the proffered holographic will.

Section 868.01(5), Stats., provides:

> **Original probate; when allowed.** Original probate of the will of a testator who died domiciled outside this state, which upon probate may operate upon any property in this state and is valid under the laws of this state, *may be granted* if the will does not stand rejected from probate or establishment in the jurisdiction where the testator died domiciled, or stands rejected from probate or establishment in the jurisdiction where the testator died domiciled solely for a cause which is not ground for rejection of a will of a testator who died domiciled in this state. The court may delay passing on the application for pro-

bate under this subsection pending the result of probate or establishment or contest at the domicile or on the application for probate under sub. (1).

Counsel for the University of Minnesota informed the court at the petition hearing that there was no evidence of any attempt to have Warner's will admitted in probate in Arizona, and no evidence that it had been rejected there.

Dennis contends that sec. 868.01(5), Stats., and interpretative case law grant the estates of nonresident decedents who own Wisconsin property the right to original probate with certain exceptions. In Dennis' view, original probate could be refused where the will stands rejected from probate or establishment in the jurisdiction of the testator's domicile and could be delayed where proceedings for probate, establishment or contest have been initiated in the state of domicile or an application for probate under another statutory subsection has been made. Absent these conditions, he contends the estate has a statutory right to original probate.

Statutory construction is a question of law that we decide de novo. *Cornellier Fireworks Co. v. St. Croix County,* 119 Wis. 2d 44, 46, 349 N.W.2d 721, 722 (Ct. App. 1984). In construing a statute, we ascertain the intent of the legislature by looking first to the language of the statute itself. *Doe v. Roe,* 151 Wis. 2d 366, 373-74, 444 N.W.2d 437, 441 (Ct. App. 1989). We assign the statutory language its ordinary and accepted meaning and will resort to outside sources to aid statutory construction only if the language is ambiguous. *Id.*

We conclude that the language of sec. 868.01(5), Stats., is not ambiguous. The statute instructs that a Wisconsin court "may" grant original probate under cer-

651

tain conditions. Another subsection of the same statute, sec. 868.01(1), directs that a Wisconsin court "shall" admit a will to probate upon proof that it stands probated or established in the jurisdiction where the testator died domiciled and is not being contested there. The word "shall" is generally construed as mandatory and "may" is generally construed as permissive. *State v. Camara,* 28 Wis. 2d 365, 371, 137 N.W.2d 1, 4 (1965). Such a construction of the word "may" is especially indicated where the word "shall" appears in close juxtaposition in other parts of the same statute. *Scanlon v. City of Menasha,* 16 Wis. 2d 437, 443, 114 N.W.2d 791, 795 (1962). We conclude that the use of the term "may" in sec. 868.01(5) is permissive and describes action that a Wisconsin court is empowered to take in the exercise of its discretion.

Interpretive case law supports our conclusion that the trial court's decision to grant or refuse original probate is an exercise of discretion. *See In re Tressing,* 86 Wis. 2d 502, 511, 273 N.W.2d 271, 276 (1979); *see also* Annotation: *Probate, In State Where Assets are Found, Of Will of Nonresident Which Has Not Been Admitted to Probate In State of Domicil,* 20 A.L.R.3d 1033, 1058 (1968) ("The courts . . . have . . . taken the position that such jurisdiction may be assumed or declined by the probate court in the exercise of a sound discretion, such discretion being influenced by comity and the distinctive circumstances surrounding each case."). Because the exercise of discretion is not the equivalent of unfettered decision-making, the record must reflect the trial court's reasoned application of the appropriate legal standard to the relevant facts in the case. *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982). Factors that may influence a court in determining whether

652

to exercise its discretionary power to admit the will of a nonresident to probate include the relative rights of the parties in interest and the presence or absence in the state of legatees named in the testamentary instrument. *In re Lamborn,* 168 Misc. 504, 6 N.Y.S.2d 192 (1938), *reprinted in* 20 A.L.R.3d at 1059.

The trial court here based its ruling entirely on two facts: first, that Warner owned property in Arizona, which meant that a proceeding in Arizona would be required at some point; and second, that there was a question as to the validity of Warner's proffered holographic will under Arizona law. Neither reason determines whether Wisconsin courts should assume original probate jurisdiction.

We note first that Wisconsin courts may act on property within the state, even though the will has not yet been admitted to probate in the state of domicile, provided other conditions of the statutes are met. *Tressing,* 86 Wis. 2d at 513, 273 N.W.2d at 277. If proceedings are later commenced in the state of domicile, Wisconsin proceedings will become ancillary. *In re Joyce,* 238 Wis. 370, 376–77, 298 N.W. 579, 582 (1941). The mere fact that proceedings here will not be considered primary when other proceedings are commenced in the state of domicile is not dispositive.

Second, Wisconsin statutes provide that every court of this state shall take judicial notice of the common-law and statutes of every other state. Section 902.02, Stats. Even before the enactment of the Uniform Judicial Notice of Foreign Law Act, common-law provided that the mere fact that a court will be called upon to administer the laws of another state, without more, is not grounds for a discretionary refusal to entertain an action

to enforce a right. *Eingartner v. Illinois Steel Co.,* 94 Wis. 70, 80–81, 68 N.W. 664, 667–68 (1896). Here, Dennis attempted to prove the provisions of Arizona law under which Warner's holographic will might be held valid. A Wisconsin court must take judicial notice of applicable Arizona law and can decide questions of the validity of a proffered holographic will. The need to take judicial notice of foreign law is not, without more, grounds for refusal to exercise discretionary jurisdiction.

Our review of the record indicates that those considerations urged by Dennis' counsel at the hearing, the convenience of the court, of Dennis, and of the University of Minnesota as principal legatee, are factors the court should have considered, but did not, when determining whether to assume original probate jurisdiction. We note that no interested party presented a countervailing interest to the court. For these reasons, we conclude that the trial court failed to exercise its discretion. The order of the trial court is therefore reversed, and the matter is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings; no costs are awarded.